ST. LUKE'S HOSPITAL ASSOCIATION OF CLEVELAND, OHIO, OF the METHODIST CHURCH, a non-profit corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 36271.

United States District Court
N. D. Ohio, E. D.

Dec. 17, 1962.

388

Thompson, Hine & Flory, Timothy F. McMahon, William H. Wallace, Cleveland, Ohio, David A. Gaskill, Cleveland, Ohio, of counsel, for plaintiff.

Edward S. Smith, David A. Wilson, Jr., Jay E. Orlin, Department of Justice, Washington, D. C., and Merle McCurdy, U. S. Atty., Cleveland, Ohio, for defendant.

GREEN, District Judge.

This is an action instituted by St. Luke's Hospital of Cleveland, Ohio, against the United States of America brought under § 1346, Title 28 of the United States Code as amended, and is for the recovery of Federal Insurance Contributions Act employment taxes imposed by Sections 3101 and 3111 of the Internal Revenue Code of 1954 as amended, 26 U.S.C.A. §§ 3101 and 3111, and Sections 1400 and 1410 of the Internal Revenue Code of 1939.

Plaintiff operates a general hospital at 11311 Shaker Boulevard, Cleveland 4, Ohio, and is a non-profit corporation duly organized and existing under the laws of the State of Ohio.

Plaintiff for many years and during all of the period involved in this lawsuit has maintained and conducted a formal program of in-hospital education and training for graduates of accredited medical schools, designed to prepare such graduates for the practice of medicine in both general and special fields. Those participating in the in-hospital training program are paid varying sums of money, denominated as a subsistence allowance by the hospital.

Plaintiff filed with the District Director of Internal Revenue at Cleveland, Ohio, its F.I.C.A. employment tax returns for each taxable period from January 1, 1953 through June 30, 1958, and paid to said District Director the F.I.C.A. employment taxes therein determined to be due. In such returns plaintiff included none of the funds classed as subsistence allowances paid to the medical school graduates engaged in its training program.

No collection of the so-called "employees' tax" for such periods was made by the plaintiff from the medical school graduates and no remittance to the District Director of either the "employer's tax" or the "employees' tax" was made by the plaintiff.

Under date of July 30, 1958, the Internal Revenue Service notified plaintiff of a proposed assessment for additional F.I.C.A. employment taxes in the amount of $16,722.42. This sum represented taxes claimed to be due based on subsistence allowances paid by the plaintiff to medical school graduates engaged in their second or subsequent years of in-hospital training during the period of January 1, 1953 through June 30, 1958.

Under date of December 2, 1958, plaintiff paid to the District Director of Internal Revenue the sum of $16,722.42, and on March 25, 1959, paid interest thereon in the amount of $2,578.97. The total amount of taxes and interest paid to said District Director was $19,301.39.

On June 4, 1959, plaintiff filed with the District Director a claim for refund for the $19,301.39 additional F.I.C.A. employment taxes together with interest. Subsequently, plaintiff received from the District Director a notice of disallowance of its claim for refund.

Plaintiff thereafter filed this action, claiming that the F.I.C.A. employment taxes and interest covering the medical school graduates engaged in their second and subsequent years of in-hospital training were illegally assessed and collected.

Plaintiff alleged:

1. That under provision of Title 26 U.S.C.A. § 3121(b) (13), all of the medical school graduates who were in attendance in in-hospital training, whether in the first, second or subsequent years of their training at the hospital, were exempted from the Act.

2. That the modest subsistence allowance given to the medical school graduates were gifts or gratuities granted in order to aid their education and training and did not constitute wages within the meaning of Sections 3101 and 3111, Title 26 U.S.C.A.

The Government contends that the exclusion under § 3121(b) (13) applied only to medical school graduates who were in their first year of in-hospital training and did not apply to any such medical school graduates who were in their second and subsequent years of training; that only medical school graduates in their first year of in-hospital training are "interns" and that those in second and subsequent years were known as "residents"; that the two classes are separate and distinct, and that therefore the exemption to "interns" in § 3121(b) (13) did not apply to graduates in their second or subsequent years of in-hospital training.

The Social Security Act Amendments of 1939, 26 U.S.C.A. § 1426(b) (14), first introduced into the social security law the exclusion from coverage for services performed by "interns". That Section now appears as 26 U.S.C.A. § 3121(b) (13), I.R.C., 1954, and reads as follows:

"(b) *Employment*.—For purposes of this chapter, the term 'employment' means any service performed after 1936 and prior to 1955 which was employment * * * under the law applicable to the period in which such service was performed, and any service, of whatever nature, performed after 1954 * * * except that, in the case of service performed after 1954, such term shall not include—

* * * * * *

"(13) service performed as a student nurse in the employ of a hospital or a nurses' training school by an individual who is enrolled and is regularly attending classes in a nurses' training school chartered or approved pursuant to State law; *and service preformed as an intern in the employ of a hospital by an individual who has completed a 4 years' course in a medical school chartered or approved pursuant to State law*" (Emphasis added).

The issue before the Court is the meaning and scope of the word "intern" as it is used in 26 U.S.C.A. § 3121(b) (13).[1]

As previously stated, this provision was first enacted into law by the 1939 Amendments, and has not been materially altered by subsequent amendments to the Internal Revenue Code.

■■■ The interpretation of the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted. 50 Am.Jur., Statutes § 236, p. 224. Amendments of a statute by the Legislature will not affect the meaning of portions of the statute which are readopted by the Legislature without change. 50 Am.Jur., Statutes § 441, p. 461. Therefore, the question for determination by the Court is the meaning of the word "intern" as used by Congress in the year 1939 in 26 U.S.C.A. § 1426(b) (14).

Plaintiff's claim is that in the year 1939 the natural, ordinary and everyday use of the term "intern" included any medical school graduate whether in his first, second or subsequent year of in-hospital training, and that under provisions of Title 26 U.S.C.A. § 3121(b) (13) medical school graduates who were in attendance for their second or subsequent years of in-hospital training were exempted from the act the same as medical school graduates in their first year of training.

The Government claim is that in the year 1939 there was in use in medical circles the words "intern" and "resident". An "intern" being a medical school graduate in his first year of in-hospital training and a "resident" being a medical school graduate in his second or subsequent year of in-hospital training. That in the year 1939 and at all times relevant to the lawsuit there was a well recognized distinction in the medical profession between residents and interns and that

Congress in providing a specific exemption from the social security laws for "interns" did not thereby provide for an exemption for "residents".

Plaintiff's principal witnesses were men of the medical profession. They testified that at or around the year 1939 the ordinary and accepted meaning of the word "intern" was the same as the ordinary and accepted meaning of the word "resident", or "resident-in-training", and that they were both understood to be graduates of a medical school who were in residence in the hospital for additional education and training without regard as to whether it was the first or subsequent years of such training; that the generally accepted meaning of the word "intern" included a "resident" or "resident-in-training". These doctors admitted that within the medical profession a distinction was made between an intern and a resident,[2] but stated that the public failed to have, or understand, that delineation.

The defense called as its expert witness, Dr. Herman G. Weiskotten, an eminent medical administrator and educator, who testified that in the medical profession at or around the year 1939 there was a distinction between "interns" and "residents". He defined the term "internship" as follows:

> "That is, the internship was an approved educational and experience program to better prepare a man to initiate the practice of medicine following his four years as a student in a medical college."

And he defined the word "resident" when used in the context of the medical field as follows:

> "A resident was a man who took special hospital training of varying periods of time following an internship, to prepare him as a specialist in a particular field of medicine."

---

1. For the purposes of this opinion reference hereafter to § 3121(b) (13) of the 1954 Code is also intended to include § 1426(b) (14) of the 1939 Code.

2. In 1939 plaintiff hospital had different applications for the positions of intern and resident.

However, on cross-examination, he admitted that the distinction was drawn principally within the medical profession.

There was also brought into evidence several dictionaries published around the year 1939, in order to present definitions of the words "intern" and "resident". Some of the dictionaries gave a definition for each of these words, making a distinction between them, where as other dictionaries of the same era made no distinction. A few gave no definition of the word "resident" as used in the medical sense.

It is the Court's conclusion that in 1939 the common and ordinary meaning of the word "intern" encompassed any medical school graduate engaged in any year of in-hospital training and that within the medical profession a technical distinction was made between the words "intern" and "resident".

The basic controversy thus resolves itself to a question of statutory construction. Plaintiff argues that the Court should apply the common ordinary understanding of the term, whereas defendant contends that the term should be given the meaning attributed to it in its technical sense as used in the medical profession.

The rule the Court must follow is to construe the statutes so as to give effect to the intent of Congress.

"In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." United States v. American Trucking Assn., Inc., 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).

Plaintiff has cited to the Court the following excerpt from the legislative history:

"And service performed as an interne (as distinguished from a resident doctor) in the employ of a hospital by an individual who has completed a four years' course in a medical school chartered or approved pursuant to State law." (House Report No. 728, at p. 49; Senate Report No. 734, at p. 58.)

The evidence in this case indicated that in 1939 the term "resident doctor" was generally applied to a physician who had completed all his formal and in-hospital training and was regularly employed by a hospital, in the same manner as a pathologist might be today.

Although the legislative history does not define "resident doctor", just as it does not define "intern", the Court is inclined to the view that Congress intended to use the term "resident doctor" to signify a non-trainee employee of a hospital, which was the generally held meaning of the term. The term "resident doctor" may be contrasted with the use of the term "resident-in-training" in a statute wherein it is clear Congress was dealing with a student-employee, 5 U.S. C.A. § 1052.

It is admitted by both parties that otherwise the legislative history of the statutes in question is particularly barren of any indication as to the Congressional intent. There is no evidence that Congress intended a restrictive or technical use of the word "intern".

■ Under such circumstances, this Court is inclined to follow the rule stated in the case of Addison v. Holly Hill Fruit, Inc., 322 U.S. 607, 617–618, 64 S.Ct. 1215, 1221–1222, 88 L.Ed. 1488 (1954):

"* * * For the ultimate question is what has Congress commanded, when it has given no clue to its intentions except familiar English words and no hint by the draftsmen of the words that they meant to use them in any but an ordinary sense. * * * *After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him.*" (Emphasis added).

In addition, when a word which has both a technical and a common and ordinary

meaning appears in a statute, the latter meaning will prevail over the former in the absence of any indication that the word was used in its technical sense. Jones v. Liberty Glass Co., 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947); Crane v. Commissioner, 331 U.S. 1, 67 S. Ct. 1047, 91 L.Ed. 1301 (1946); Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945); Anderson v. United States, 119 F.Supp. 567 (D.C.Mont., 1954); Orr Ditch & Water Co. v. Justice Court of Reno Twp., 64 Nev. 138, 178 P.2d 558 (1947); Terral v. Terral, 212 Ark. 221, 205 S.W.2d 198, 1 A.L.R.2d 1092 (1947); Industrial Commission v. Roth, 98 Ohio St. 34, 120 N. E. 172, 6 A.L.R. 1463 (1918); State v. Tardiff, 111 Me. 552, 90 A. 424, L.R.A. 1915A, 817 (1914).

Counsel for the Government, in support of its position that the technical meaning of a word should prevail in interpreting a statute, has argued that the words of a statute are to be taken in the sense in which they will be understood by the public to which they are directed.

The key to this rule is that the statute itself must be directed to a particular segment of society.

A number of cases have been cited, wherein this rule has been applied. The Court has considered them, and finds that they are not analogous to the matter under consideration.

In O'Hara v. Luchenbach Steamship Co., 269 U.S. 364, 46 S.Ct. 157, 70 L.Ed. 313 (1926), the statute under consideration was § 2 of the Seaman's Act of March 4, 1915. This Act involving the safety and welfare of the seaman was directed solely to individuals and companies in the maritime trade, and its language was construed as it would be understood in that particular field.

The theory that a statute restricted to one field or segment of society should be construed in accordance with that group's understanding was explained in N.L.R.B. v. Coca-Cola Co., 350 U.S. 264, 76 S.Ct. 383, 100 L.Ed. 285 (1956), wherein the Court said:

"But if the word be deemed to have a peculiar connotation for those intimate with trade-union affairs, it is incumbent upon us to give the word its technical meaning, Boston Sand Co. v. United States, 278 U.S. 41, 48, [49 S.Ct. 52, 73 L.Ed. 170, 177,] for § 9(h) [National Labor Relations Act] is an integral part of a statute whose sponsors were familiar with labor organizations and labor problems and which was doubtless drawn by specialists in labor relations." 350 U.S. 264, 269, 76 S.Ct. 383, 386, 100 L.Ed. 285.

In some cases, the title of the statute under consideration makes immediately obvious the public to which it is directed, e. g., "Taxes on Insurance Companies," Western & Southern Life Ins. Co. v. Huwe, 116 F.2d 1008 (C.A. 6, 1941); "Taxes on Soft Drinks," Carter v. Liquid Carbonic Pacific Corp., 97 F.2d 1 (CA 9, 1938).

The Supreme Court decisions of United States v. Isham, 17 Wall. 496, 84 U.S. 496, 21 L.Ed. 728 (1873), Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170 (1928) and Deputy v. Dupont, 308 U.S. 488, 60 S.Ct. 89, 84 L.Ed. 449 (1940) are cited. In Boston Sand & Gravel the Supreme Court found guidance from prior usage of the language by Congress. In both Isham and Dupont the Supreme Court adopted broader definitions of the language in question, rejecting proposed technical definitions. In Dupont the Supreme Court reaffirmed its holding in Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932), wherein it was said:

"The rule which should be applied is established by many decisions. 'The legislature must be presumed to use words in their known and ordinary significance.' [citations omitted]. 'The popular or received import of words furnishes the general rule for interpretation of public laws.' [citations omitted]" 284

U.S. 552, 560, 52 S.Ct. 211, 213, 214, 76 L Ed. 484.

In the case before the Court the statute is not restricted to any one segment of society or to any one special field. There is no prior Congressional usage of the language which the Court can look to. The statute in question bears no title from which it can be ascertained as to whom it was directed.

The fact of the matter is that 26 U.S. C.A. § 3121 contains eleven major divisions. Section 3121(b), being one of the eleven divisions, contains exclusions from coverage for fifteen major categories with twenty subgroupings, relating to many individuals in various unrelated fields of endeavor.

The Court does not believe that the technical meaning ascribed in medical circles to the words "intern" and "resident" must be said to be the understanding and intent of Congress in its use of the word "intern" in a statute of such breadth and scope which did not deal solely with hospitals and the medical profession.

At this point it should be stated that the Court has concluded that Congress utilized the term "intern" in 1939, in enacting § 1426(b) (14), in its broad generic sense, and that it was the intention of Congress thereby to exclude from coverage under the Social Security Act all medical school graduates engaged in a program of in-hospital training. The foundation for this conclusion goes deeper than reliance upon rules of statutory construction, and reflects, in the Court's opinion, a general Congressional attitude toward the medical graduate in relation to the Social Security program.

Self-employed doctors of medicine are excluded from coverage under the Social Security Act. "Interns" or "residents", as doctors in training, upon completing their course of in-hospital training would, in the main, become self-employed doctors. They would thereafter, as long as they remained in private practice, be exempt from taxation under the Social Security Act, as it is presently constituted.

The span of most residency programs is from one to four years. It is most difficult to accept an interpretation of the statute which would result in exemption of the medical graduate for his first year of in-hospital training and during his entire professional life as a self-employed physician, and yet include him within the scope of the Social Security Act for the interim period of his residency.

The imposition of a tax on the "resident" who is in his second or subsequent year of in-hospital training as contrasted to exemption from taxation of the medical graduate who enters private practice after one year of in-hospital training would be discriminatory. The Court does not believe that Congress intended to differentiate between the medical graduate who desired, in the furtherance of his professional education, to proceed beyond a single year of in-hospital training and one who did not.

The Court's attention has been drawn to § 3121(b) (6) (C) (iv) of the Code, which provides an exemption from Social Security for service performed in the employ of the United States:

"by any individual as an employee included under section 2 of the Act of August 4, 1947 (relating to certain interns, student nurses, and other student employees of the hospitals of the Federal Government; 5 U.S.C., sec. 1052)."

Section 1052 of Title Five, which is incorporated by reference into the foregoing statutory provision, reads:

"The Classification Act of 1949, as amended, [and extended], shall not apply to student nurses, medical or dental interns, residents-in-training, student dietitians, student physical therapists, and student occupational therapists, assigned or attached to a hospital, clinic, or medical or dental laboratory operated by any department, agency, or instrumentality of the Federal Government, or by the District of Columbia * * *."

Counsel for the Government points to this reference to both "interns and resi-

dents-in-training" found in 5 U.S.C.A. § 1052 as evidence of the fact that where Congress has intended to exempt "residents" it has done so by specifically referring to them.

In making this observation counsel has ignored the fact that in the Social Security legislation itself, 26 U.S.C.A. § 3121(b) (6) (C) (iv) the term "intern" alone is used, just as it is used in § 3121 (b) (13).

Reference to the legislative history of 5 U.S.C.A. § 1052 is interesting insofar as it discloses Congressional intent with regard to the treatment to be accorded those preparing for the medical professions as part of the Classification Act. The report of the House Committee on Post Office and Civil Service is set out at 1947 U.S.Code Congressional Service, pp. 1554–55. The report refers to the bill as relating to "certain interns, student nurses, and other student-employees of hospitals of the Federal Government."

The clear import of the committee report is an intent that all medical student-employees be given equal treatment. No differentiation is made with regard to the number of years that any individual in the general category has been engaged in a program of medical employment-training. It is worthy of note that although the act applies both to "interns" and "residents-in-training", the committee report uses the term "intern" only, and the legislative history discloses an intent that all medical student-employees be treated as one general category.

There is nothing in the legislative history of 5 U.S.C.A. § 1052 to indicate that Congress intended thereby to change the substance of 26 U.S.C.A. § 3121(b) (6) (C) (iv). It is reasonable to assume that if Congress intended to broaden the definition of the word "intern" as it existed in the taxing statute since 1939 mention would be made of that fact. The more reasonable presumption is that 5 U.S.C.A. § 1052 was intended to be reflective of the meaning of "intern" as it was used and understood when 26 U.S. C.A. § 3121(b) (6) (C) (iv) was enacted.

Counsel for the Government has urged that Sections 3121(b) (6) (C) (iv) and 3121(b) (13) should be construed *in pari materia*, as they both deal with the same subject matter in the same statute. If the two sections are construed *in pari materia*, then it follows that the exemption of "residents-in-training" in § 3121 (b) (6) (C) (iv) brought about by 5 U.S.C.A. § 1052 should also apply to § 3121(b) (13).

To construe these sections so as to provide for an exclusion for interns and residents-in-training in Federal Hospitals while limiting the exclusion to "interns" only in non-Federal Hospitals would certainly result in discrimination in the treatment of "residents-in-training" as between the two classes of hospitals.

The evidence indicated that residencies at Veterans Administration Hospitals are often filled by "rotating" residents from a University affiliated hospital for a period of several months. In effect, the resident-in-training is on loan to the Veterans Hospital during part of his training. If we construe the exemptions to the Act as urged by the Government, this would mean that the resident would be covered by the Act while in training at the University Hospital and excluded while in training at the Federal Hospital. The Court does not believe that Congress intended such a result.

"An intent to discriminate unjustly between different cases of the same kind is not to be ascribed to the legislature. It is not to be presumed that the legislature intended to make a distinction which would convict it of an unaccountable capriciousness on the subject. Hence, where the legislature has clearly laid down a rule for one class of cases, it is not readily to be supposed that, in the same act, a different rule has been prescribed for another class of cases within the same reason as the first. Where the language of a statute is ambiguous, the courts will strive to avoid an interpretation imputing a design to distinguish be-

tween cases upon a course of reasoning to (sic.) unsubstantial and too finely drawn for the regulation of human action, or producing arbitrary or incongruous results, or an anomalous, capricious, or senseless distinction or discrimination, or an unequal operation generally. Indeed, nothing but clear and unmistakable language will warrant a court in a construction which will produce the unequal operation of a statute. *Hence, unless it can be clearly shown that there is some statutory provision requiring a distinction to be made between the rights of one class of persons or entities and those of another, the courts will, if possible, give such construction to the statute as will place both on an equal footing. * * *"* (Emphasis added). 50 Am.Jur., 380, 381, Statutes, § 372.

■ It is the Court's finding that the exemption from the Social Security Act for "interns" as set forth in § 3121(b)(13) applies to all medical graduates engaged in a program of in-hospital training, without regard to the year of training, and includes that group which are now known and which were then known as "residents" or "residents-in-training" within the medical profession in the year 1939.

Now coming to the second contention of plaintiff:

"That the modest subsistence allowance given to the medical school graduates were gifts or gratuities granted in order to aid their education and training and did not constitute wages within the meaning of Sections 3101 and 3111, Title 26 U.S. C.A."

Although the Court's conclusion on the issue of exemption renders this question academic, the Court believes that it is of sufficient importance so that it should be answered.

It is the plaintiff's contention that the doctor-trainees, interns or residents, are not employees of St. Luke's Hospital for the purposes of the Federal Insurance Contributions Act, and that the subsistence allowance paid them is not remuneration for employment. The Court is of the opinion that this contention by the plaintiff is not well taken.

■ Section 3121(d) of the Internal Revenue Code of 1954, which is substantially the same as § 1426(d) of the Internal Revenue Code of 1939, defines an employee as any individual who, under the usual common law rules applicable in determining the existence of an employer-employee relationship, has the status of an employee. If the relationship of employer-employee exists, it is immaterial how the parties themselves describe the relationship. Treasury Regulations on Employment Tax (1954 Code), Sec. 31.3121(d)–1(A) (3); Treasury Regulations 128, Sec. 408.204 (a).

This general statutory language has been amplified by Treasury Regulations, Sec. 31.3121(d)–1(C) (2), which provides:

"Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services.

In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * * "

Section 408.204(c) of Treasury Regulations 128 is substantially the same.

The Supreme Court has indicated that this language is to be broadly construed in keeping with the basic purpose of the Social Security Act. United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L. Ed. 1757 (1948).

The residents in training, although in the hospital for the purpose of receiving additional education, render a service for the compensation which they receive. Their compensation, whether listed as a stipend or subsistence allowance, was paid to them by the hospital under a written agreement which the resident-in-training entered into with the hospital at the time that arrangements were made for him to serve his residency. The agreements provide generally that the resident is prohibited from engaging in any other work and that he will be subject to the rules and regulations of the hospital. His hours of services are designated by the hospital. The hospital furnishes food, lodging, uniforms, laundry service, and a stipend or subsistence allowance. In addition, the hospital provides him with Blue Cross insurance, group life insurance, and a 2-week paid vacation.

The evidence indicated that the average amount paid at St. Luke's Hospital to a resident currently ranges from $200 to $325 a month. The amount of the stipend or subsistence allowance paid would not be sufficient to attract the medical school graduate to the institution, without the factor of the in-hospital medical training which was to be received during his stay at the hospital. The evidence, however, also indicated, by reason of the shortage of interns and residents-in-training as compared to the number of hospital openings, that in some instances at other hospitals residents were being offered as much as $6,-000 to $7,000 a year, this certainly being more than a subsistence allowance.

The evidence indicated that although a resident was in a hospital for the purpose of further training in a medical specialty, his services in the hospital were needed and required in order to more fully fulfill the obligation of the hospital to the patients confined there. The amounts paid to residents are in anticipation of the hospital obtaining their services so that it can adequately provide competent medical and hospital care for its patients.

The residents and interns perform services on behalf of patients of the hospital at the direction of the staff physicians. Medical functions which they perform are subject to supervision of the medical staff of the hospital. Although the supervision is done directly by the medical staff and staff physicians, the hospital, operating through the medical staff, has established rules and regulations covering the services of residents and retains the right to discharge the resident for failure to comply with the established rules. Personnel policies and their enforcement are considered an administrative matter at plaintiff hospital.

The hospital under the doctrine of respondeat superior has been held responsible and liable to third persons for the torts committed by residents. Klema v. St. Elizabeth's Hospital, 170 Ohio St. 519, 166 N.E.2d 765 (1960).

By reason of all the foregoing, the Court is of the opinion that a resident is an employee of the hospital; that he would be subject to the provisions of the Social Security Act were he not exempt from the Act by reason of the exclusionary provisions of 26 U.S.C.A. § 3121(b) (13).

The Court finds that 26 U.S.C.A. § 3121(b) (13) excludes from coverage under the Social Security Act all medical graduates engaged in a program of in-hospital training, whether they are "interns" or "residents", and that accordingly the plaintiff in this action is entitled to prevail. Judgment for plain-

tiff in the sum of $19,301.39 with interest from March 25, 1959.

, This memorandum is adopted as Findings of Fact and Conclusions of Law, in accordance with Rule 52, Federal Rules of Civil Procedure.