BOSTON SAND AND GRAVEL COMPANY *v.* UNITED STATES.

No. 15. Argued February 28, 29, 1928. Reargued October 18, 1928.—Decided November 19, 1928.

42

*Mr. John W. Davis,* with whom *Mr. Foye M. Murphy* was on the brief, for petitioner.

44

*Assistant Attorney General Farnum,* with whom *Solicitor General Mitchell* and *Mr. John T. Fowler, Jr.,* were on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a libel in admiralty brought by the petitioner to recover for damages done to its steam lighter *Cornelia* by a collision with the United States destroyer *Bell.* It is brought against the United States by authority of a special Act of May 15, 1922, c. 192, 42 Stat. 1590. There has been a trial in which both vessels ultimately were found to have been in fault and it was ordered that the damages should be divided. 7 F. (2d) 278. Thereafter the damages were ascertained and the petitioner sought to be allowed interest upon its share. (There was no cross libel.) The Circuit Court of Appeals, going on the words of the statute, parallel legislation, and the general understanding with regard to the United States, held that no interest could be allowed. 19 F. (2d) 744. As there was a conflict of opinion with the Second Circuit dealing with similar language in a special act, *New York & Cuba Mail S. S. Co.* v. *United States,* 16 F. (2d) 945, a writ of certiorari was allowed by this Court, 275 U. S. 519.

The material words of the Act are that the District Court " shall have jurisdiction to hear and determine the whole controversy and to enter a judgment or decree for the amount of the legal damages sustained by reason of said collision, if any shall be found to be due either for or against the United States, upon the same principle and measure of liability with costs as in like cases in admiralty between private parties with the same rights of appeal." On a hasty reading one might be led to believe that Con-

gress had put the United States on the footing of a private person in all respects. But we are of opinion that a scrutiny leads to a different result. It is at least possible that the words fixing the extent of the Government's liability were carefully chosen, and we are of opinion that they were. We start with the rule that the United States is not liable to interest except where it assumes the liability by contract or by the express words of a statute, or must pay it as part of the just compensation required by the Constitution. *Seaboard Air Line Ry. Co. v. United States*, 261 U. S. 299, 304, 306. Next we notice that when this special act was passed there was a recent general statute on the books, the Act of March 9, 1920, c. 95, § 3, 41 Stat. 525, 526, allowing suits in admirality to be brought *in personam* against the United States, in which it was set forth specifically that interest was to be allowed upon money judgments and the rate was four per centum, not the six per centum that the petitioner expects to get. The later general statute passed as a substitute for special bills like the one before us, allows suits in admiralty for damages done by public vessels but excludes interest in terms. Act of March 3, 1925, c. 428, § 2, 43 Stat. 1112.

We are satisfied by the argument for the Government that the policy thus expressed in the Act of 1925 had been the policy of the United States for years before 1922, and that the many private acts like the present generally have been understood, before and since the act now in question, not to carry interest by the often repeated words now before us. This was stated by the Attorney General in a letter to the Chairman of the Senate Committee on Claims when the Act of 1925 was under consideration (Sen. Report 941, p. 12, 68th Cong., 2d Sess.) and the bill was amended so as to remove all doubt. The Act of March 2, 1901, c. 824, 31 Stat. 1789, believed to be the first of the private acts in the present

form, was passed after an amendment striking out an allowance of interest, thus showing that the words now relied upon then were understood not to allow it. The same thing has happened repeatedly with later acts, and when by exception interest has been allowed, it has been allowed by express words. Before 1901, since 1871, such cases had been referred to the Court of Claims, which was forbidden by statute to allow interest. Rev. Stats. § 1901. Code, Title 28, § 284. It is said that when the meaning of language is plain we are not to resort to evidence in order to raise doubts. That is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists. If Congress has been accustomed to use a certain phrase with a more limited meaning than might be. attributed to it by common practice, it would be arbitrary to refuse to consider that fact when we come to interpret a statute. But, as we have said, the usage of Congress simply shows that it has spoken with careful precision, that its words mark the exact spot at which it stops, and that it distinguishes between the damages caused by the collision and the later loss caused by delay in paying for the first,— between damages and ' the allowance of interest on damages ', as it is put by Mr. Justice Bradley in *The Scotland*, 118 U. S. 507.

What the Act authorizes the Court to ascertain and allow is the · ' amount of the legal· damages sustained by reason of said collision.' Of these, interest is no part. It might be in case of the detention of money. But this is not a claim for the detention of money, nor can any money be said to have been detained. When a jury finds a man guilty of a tort or a crime, it may determine not only the facts but also a standard of conduct that he is presumed to have known and was bound at his peril to follow. *Nash* v. *United States*, 229 U. S. 373, 377. But legal fiction never reached the height of holding a defendant bound .

to know the estimate that a jury would put upon the damage that he had caused. As the cause of action is the damage, not the detention of the money to be paid for it, it could be argued in a respectable Court, as late as 1886, that at common law, even as a matter of discretion, interest could not be allowed. *Frazer* v. *Bigelow Carpet Co.*, 141 Mass. 126. And although it commonly is allowed in admiralty, still the element of discretion is not wholly absent there. As stated by Mr. Justice Bradley in *The Scotland*, 118 U. S. 507, "The allowance of interest on damages is not an absolute right." When the Government is concerned, there is no obligation until the statute is passed and the foregoing considerations gain new force.

It has been urged that the United States would claim interest, and that, as the statute speaks of ' damages due either for or against the United States ' the claims on the two sides stand alike. But that is not true. The United States did not need the statute, and it has been held that, even in the adjustment of mutual claims between an individual and the Government, while the latter is entitled to interest on its credits, it is not liable for interest on the charges against it. *United States* v. *Verdier*, 164 U. S. 213, 218, 219. *United States* v. *North American Transportation & Trading Co.*, 253 U. S. 330, 336.

The mention of costs and the omission of interest again helps the conclusion to which we come. Compare Judicial Code, § 152, and the same, § 177. U. S. Code, Title 28, §§ 258, 284.

*Decree affirmed.*

MR. JUSTICE SUTHERLAND, dissenting.

In collision cases between private parties, interest, as a general rule, is allowed upon the amount of the loss sustained. That the allowance may be to some extent in the discretion of the court does not affect the question presented here, since the court below denied interest not as

a matter of discretion but upon the ground that it had no power to allow it against the United States. From an examination of the record, it fairly may be assumed that if the case had been one between private parties interest would have been allowed.

It is said that when interest is allowed it is no part of the damages. But, very clearly, I think, the settled rule is to the contrary. When the obligation to pay interest arises upon contract, it is recoverable thereon as damages for failure to perform; " and when recoverable in tort it is chargeable on general principles as an additional element of damage for the purpose of full indemnity to the injured party." 1 Sutherland on Damages (4th Ed.) § 300, p. 939. In *Wilson* v. *City of Troy*, 135 N. Y. 96, the New York Court of Appeals, holding that in certain actions sounding in tort interest is allowed " as a part of the damages " as matter of law, said (pp. 104, 105): " The reason given for the rule is that interest is as necessary a part of a complete indemnity to the owner of the property as the value itself, and in fixing the damages, is not any more in the discretion of the jury than the value . . . In an early case in this state the principle was recognized that interest might be allowed, by way of damages, upon the sum lost by the plaintiff in consequence of defendant's negligence. (*Thomas* v. *Weed*, 15 John. 255.)" These principles find abundant support in the decisions of this Court.

In *The "Atlas,"* 93 U. S. 302, 310, the general rule is laid down that satisfaction for the injury sustained is the true rule of damages, and that by this is meant that the measure of compensation shall be equal to the amount of injury received, to be calculated for the actual loss occasioned by the collision, upon the principle that the sufferer is entitled to complete indemnification for his loss. Complete recompense for the injury is required.

In *The "Wanata,"* 95 U. S. 600, 615, this Court, pointing out the essential difference between costs and interest,

said: "Interest is not costs in any sense, and, when allowed, it should be decreed as damages, and be added to the damages awarded in the District Court."

In *United States* v. *North Carolina,* 136 U. S. 211, 216, this Court said: "Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money or of property, or of compensation, to which the plaintiff is entitled; . . ."

In *The "Santa Maria,"* 10 Wheat. 431, 445, Mr. Justice Story, speaking for the Court, said: "Damages are often given by way of interest for the illegal seizure and detention of property; and, indeed, in cases of tort, if given at all, interest partakes of the very nature of damages."

In *The "Umbria,"* 166 U. S. 404, 421, this Court recognized that the general rule was that in cases of total loss by collision damages are limited to the value of the vessel, with interest thereon, etc.

See, also, *Redfield* v. *Ystalyfera Iron Company,* 110 U. S. 174, 176; *The "Scotland,"* 105 U. S. 24, 35.

It does not seem necessary to cite the numerous decisions of the lower federal and state courts to the same effect. A very good statement is to be found in *Balano* v. *The Illinois,* 84 Fed. 697, where it was held that the value of the injury done to the vessel is to be ascertained, and then an amount equal to interest thereon to the time of the trial may be added, not strictly as interest, but as part of the damage compensation. The court said [p. 698]:

"The sum called interest added to the $5,000 was necessary to make full compensation at this time. It is not strictly interest—which is due only for the withholding of a debt—but the compensation for the permanent injury to the vessel was due as of the time when it was inflicted, and the addition of what is called interest is justly added for withholding it . . . it is quite well settled that in ascertaining the amount of compensation to be

paid, it is justifiable to find the extent of the injury valued in money, and add a sum equal to interest to make compensation at the time of such finding."

This is in accordance with the general rule that for the wrongful sinking of a ship the owner is entitled to *restitutio in integrum*, that is, he is entitled " to be put in as good position pecuniarily as if his property had not been destroyed." *Standard Oil Co. v. So. Pacific Co.*, 268 U. S. 146, 155, 158.

In the light of the foregoing, I am unable to see any ground for differentiating the rule of damages applicable to the present case from that applicable to eminent domain cases, that is to say, the owner is entitled to the amount that would be *just compensation* if the ship had been taken by the power of eminent domain. Just compensation means " the full and perfect equivalent of the property taken . . . the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken . . . the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added." *Seaboard Air Line Ry. v. United States*, 261 U. S. 299, 304, 306. See also, *Liggett & Myers v. United States*, 274 U. S. 215.

In *Miller v. Robertson*, 266 U. S. 243, 258, the rule is stated: " Generally, interest is not allowed upon unliquidated damages. *Mowry v. Whitney*, 14 Wall, 620, 653. But when necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages."

It follows indubitably from these premises that interest is allowable against the United States by the words " legal damages " *ex vi termini*. If additional reason for this

conclusion be needed, it will be found in the definite determination of this Court that the obligation of the United States to pay interest may be imposed by the name of *damages* as well as by the name of *interest*. *Angarica* v. *Bayard,* 127 U. S. 251, 260, where it is said that one of the recognized exceptions to the rule that the United States is not liable to pay interest is " where interest is given expressly by an act of Congress, either by the name of interest or by that of damages."

For this conclusion, the Court cites a number of opinions of the Attorneys General of the United States, among them that of Attorney General Cushing reported in 7 Op. A. G. 523, from the head-note to which the language above quoted was taken. In the course of that opinion the Attorney General said (p. 531):

" There is another possible case of apparent, but not real, exception, if the case exists, and that is, of 'damages' provided by statute to be assessed against the Government. In one of the general acts above cited, a statute-interest on the detention of money is the established rendering of the term 'damages.' (1 Stat. at Large, p. 85.) If, therefore, any such case of claim on the Government can be shown, with color of demand for interest as 'damages,' it will be no departure from the rule never to allow interest except on express requirement of statute."

By the statute under consideration the United States is made liable for " legal damages " upon the same principle and measure of liability as in like cases between private parties. The authorities above reviewed put the meaning of these words beyond all reasonable doubt; and it is not permissible to attempt to vary that meaning by construction. The rule announced by Chief Justice Marshall in *United States* v. *Wiltberger,* 5 Wheat. 76, 95–96—" Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one

indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest."—has, ever since, been followed by this Court.

In *Hamilton* v. *Rathbone,* 175 U. S. 414, 419, it is said: "The general rule is perfectly well settled that, where a statute is of doubtful meaning and susceptible upon its face of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in question, the mischiefs intended to be remedied, the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction. But where the act is clear upon its face, and when standing alone it is fairly susceptible of but one construction, that construction must be given to it." (Citing cases.)

And the Court added (p. 421): "Indeed, the cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity, that an extended review of them is quite unnecessary. The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to, to *solve,* but not to *create* an ambiguity."

It was further said that if the section of law there under consideration were an original act there would be no room for construction, and that only by calling in the aid of a prior act was it possible to throw a doubt upon its proper interpretation.

The rule was tersely stated in *United States* v. *Hartwell,* 6 Wall. 385, 396: "If the language be clear it is conclusive. There can be no construction where there is nothing to construe."

This is also the recognized rule of the English courts. In one of the English decisions Lord Denman said the

court was bound to look to the language employed and construe it in its natural and obvious sense, even though that was to give the words of the act an effect probably never contemplated by those who obtained the act and very probably not intended by the legislature which enacted it. *The King* v. *The Commissioners,* 5 A. & E. 804, 816. See also, *United States* v. *Lexington Mill Co.,* 232 U. S. 399; *Caminetti* v. *United States,* 242 U. S. 470, 485; *Russell Co.* v. *United States,* 261 U. S. 514, 519.

The enforcement of the statute according to its plain terms results in no absurdity or injustice, for, as this Court recently said, in holding the United States liable for damages including interest in a collision case where the Government had come into court to assert a claim on its own behalf: "The absence of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it." *United States* v. *The Thekla,* 266 U. S. 328, 340.

To refuse interest in this case, in my opinion, is completely to change the clear meaning of the words employed by Congress by invoking the aid of extrinsic circumstances to import into the statute an ambiguity which otherwise does not exist and thereby to set at naught the prior decisions of this Court and long established canons of statutory construction.

MR. JUSTICE BUTLER, MR. JUSTICE SANFORD and MR. JUSTICE STONE concur in this opinion.