BOWLES, Price Administrator, v. RUPPEL.

Civil Action No. 604.

District Court, D. Delaware.
Feb. 18, 1946.

Howard L. Fussell, Enforcement Atty., of Wilmington, Del., for Office of Price Administration.

James M. Tunnell, Jr., of Georgetown, Del., for defendant.

LEAHY, District Judge.

The Price Administrator seeks damages and an injunction for certain alleged violations of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq. The first count alleges defendant has failed to file a registration statement in violation of Section 7 of the Regulation (8 F.R. 7322); that defendant has failed to file change of tenancy notices; and has demanded and received rent other than in the course of trade or business of housing accommodations in excess of rents established by the Regulation.[1] The second count asks treble damages for the overcharges described and alleges that these overcharges amount to $660. Defendant's answer denies the allegations of the complaint. She utilized interrogatories for the purpose of obtaining certain information from plaintiff.

Evidence adduced at the trial and answers to interrogatories disclose certain facts which are beyond dispute. Although the capacity in which defendant acted is in dispute, it was nevertheless established that defendant did not file a registration statement for a certain property and that she also did not file change of tenancy forms

---

[1] The pertinent provisions of the Regulation are:

Sec. 7(d)(2). Registration Statement. "The landlord shall prepare the form known as 'Registration Statement' if the maximum rent for the dwelling unit is determined under any paragraph of section 4 other than paragraph (a), (g), or (h). The landlord shall prepare the Registration Statement in triplicate and shall send the three copies to the area rent office. The Administrator shall retain one copy on file, and he shall cause one copy to be delivered to the tenant and one copy, stamped to indicate that it is a correct copy of the original, to be returned to the landlord."

Sec. 7(d)(3). Change in Tenancy. "Within five days after renting to a new tenant, the landlord shall file a form provided by the area rent office for this purpose. The landlord shall state the maximum rent for the dwelling unit, and he shall obtain the new tenant's signature on this form."

Sec. 13(8). "'Landlord' includes an owner, lessor, sublessor, assignee or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations, or an agent of any of the foregoing."

590

with respect to a number of properties located at Rehoboth Beach, Delaware. It was also shown that defendant had received excess rent for certain other premises, but with respect to the rent for 501 King Charles Avenue, defendant argues that the rent received ($200 for the period July 15, 1944 to September 15, 1944) was justified under the circumstances. The registration for this property was offered in evidence and showed the registered rent to be $45 per month. But there was a notation on the bottom of the certificate in section (c)7 which read as follows: "This is a yearly rate. Seasonal rate $40 per week." Defendant argues that if she otherwise had any responsibility in the matter, she did not here offend the Regulation, for she rented the premises on a seasonal and not a yearly rate.

At trial, defendant was called as one of plaintiff's witnesses. Before testifying, defendant's counsel filed a claim of immunity under 50 U.S.C.A.Appendix, § 922. This statute, which is the Emergency Price Control Act, adopts by reference the language of 49 U.S.C.A. § 46.[2] This latter statute, which is the Compulsory Testimony Act of February 11, 1893, refers to hearings "before the Interstate Commerce Commission." The former statute, 50 U.S.C.A. Appendix, § 922, refers to hearings before the Administrator. After defendant filed her claim, the court warned plaintiff that he might be in peril of loss of the right to subject the defendant to any forfeiture penalty. In other words, the court added a warning to that of defendant that defendant intended to take advantage of any rights or privileges which she might have by virtue of being subjected to interrogations by plaintiff. The court, as defendant correctly suggests, did not order plaintiff to do anything; it merely pointed out what defendant had already pointed out both orally and in writing, that defendant was

going to rely on any rights which she might have, if plaintiff proceeded in interrogating her as his own witness.

At the close of plaintiff's case, defendant moved to dismiss, mainly on the theory that plaintiff, by examining defendant after her claim of immunity, is estopped not only from prosecuting defendant criminally but also from prosecuting any action involving a penalty or forfeiture; and that the present action is obviously penal in nature. After hearing the arguments of counsel, the court suggested that the defendant proceed with her defense without prejudice to the ultimate disposition of her motion to dismiss. All counsel agreed to this procedure. Since, at the conclusion of the whole case, defendant asked for judgment, for reasons in addition to those stated in her motion to dismiss, I prefer not to consider the motion to dismiss alone, but to treat it, together with the other reasons, as to whether defendant should have judgment. Defendant, then, seeks judgment on all grounds because (1) plaintiff is estopped from proceeding in this action by reason of his examination of defendant after notice or claim of immunity; (2) defendant is not a "landlord" within the meaning of the word as used in the Regulation; and (3) with respect to the King Charles Avenue property, a seasonal rent was charged, which was permitted and justified under the registration statement (which defendant filed) and under the Regulation.

1. In the view which I take of the case it is unnecessary to consider the interesting and difficult question raised by the first reason assigned for dismissal.[3] I shall accordingly proceed to discuss the second reason.

2. Defendant is not a "landlord" within the meaning of the word as used in the Rent Regulation. It appeared from the trial, and I now find, that defendant, along

[2] The language of the latter statute is, in part, as follows:

"No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the commission, whether such subpoena be signed or issued by one or more commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the preceding chapter on the ground or for the reason that the testi-

mony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding * * *."

[3] For one view on this question see Bowles v. Seitz, D.C., 62 F.Supp. 773.

with other real estate brokers at Rehoboth Beach, followed the practice of bringing together both prospective landlords and tenants for contractual purposes. In many cases, the brokers would have a prospective tenant with no available housing accommodation to rent; and in such cases they would then search out in an effort to find prospective landlords. Now, no amount of argument is necessary to show that such a broker is not a landlord according to the dictionary meaning of the term. But here the law,[4] as it may, uses its own definition and Section 12(8) of the Regulation defines a landlord as follows: "'Landlord' includes an owner, lessor, sublessor, assignee or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations, or an agent of any of the foregoing." In an official interpretation of the Regulation for housing, the Administrator compiled a booklet, revised July 21, 1945, and known as Form (d) 302. On page 123 of these interpretations the following language appears: "Where rental property is handled by a managing agent on behalf of the owner, the registration statement must be signed either by the owner in his own name as landlord or by the agent as agent, unless the agent appears in the lease as lessor, in which event the agent should sign the registration statement as the landlord." Obviously from the testimony, defendant here was not a managing agent, for she had no control over the properties in question and attended to none of the repairs. It is true in some cases she collected the rent and gave it to the landlord, but it was shown to my satisfaction that this was merely a personal favor for the benefit of the landlord and was a practice generally followed in the summer resort at Rehoboth Beach.

While I am not bound by OPA's own interpretation of its Regulation, that interpretation clearly reenforces my opinion as to the proper interpretation to be given this Regulation. I think "agent," as used in the Regulation, means a general or managing agent of the landlord, such as a landlord

incapable of taking care of his own affairs would be required to have or such as a landlord who did not wish to be bothered with business details about his properties would have. I do not think it means a broker or casual agent, who merely brings a prospective tenant and landlord together. In the case of the broker or casual agent, his functions are completed when the parties sign an agreement; as a broker he has no further duties.[5] It would be contrary to business practice to impose the burdens provided by the Regulation on a broker which are to continue long after the contractual service which he performed is completed. Without being liable to a charge of arbitrary or capricious conduct, the OPA Administrator might be able to impose such a burden on a broker or casual agent and such requirements might still be within the bounds of reasonableness. But, in the absence of expressed language contained in his own Regulation, I shall assume the Administrator did not intend to upset a long established business practice.

■ Moreover, defendant, according to agency law, is not an agent, either general or special, but is simply a broker. It is a fundamental rule of agency that an agent is a fiduciary and, as such, has fiduciary obligations to his principal—to act for him and for him alone in a transaction. Restatement, Agency, Sec. 1. In the case at bar defendant acted for both landlord and tenant and, of course, could not be an agent of both. She was only a broker. I conclude that the word "agent" as used in the Regulation is used accurately; it means a general or managing agent in the strict sense.

3. Since my holding with respect to the capacity in which defendant acted is dispositive of the case, I shall not pause to consider whether the registration statement with respect to the King Charles Avenue property permitted the rent which was, in fact, charged and collected.

Judgment should accordingly be entered for defendant.

---

[4] Boston Sand & Gravel Co. v. United States, 49 S.Ct. 52, 278 U.S. 41, 73 L.Ed. 170.

[5] Sec. 7 of the Regulation is concerned with the duties of a "landlord". Sec. 8 of the Regulation provides:

"Inspection. Any person who rents or offers for rent or acts as a broker or agent for the rental of housing accommodations and any tenant shall permit such inspection of the accommodations by the Administrator as he may, from time to time, require."

Sec. 8 is not without significance. The author of the Regulation must have known what a "broker" was. The failure to include the word "broker" within the definition of "landlord", as it appears in Sec. 7, reenforces the interpretation made here of Sec. 7.