Rogers C. B. MORTON, Secretary of
Interior, United States Dept.
of Interior

v.

DELTA MINING, INC.

Rogers C. B. MORTON, Secretary of the
Interior, United States Department
of the Interior

v.

G. M. W. COAL COMPANY, INC.

Rogers C. B. MORTON, Secretary of
Interior, United States Dept. of
the Interior

v.

Edward MEARS et al.

Appeal of UNITED STATES of America,
in Nos. 73–1752–73–1753, 73–1848.

Nos. 73–1752, 73–1753, 73–1848.

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1974.

Decided March 20, 1974.

As Amended June 12, 1974.

John L. Murphy, Chief, Government Regulations Section, Crim. Div., Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D. C., for appellant; Richard L. Thornburgh, U. S. Atty., of counsel.

Frederick R. Blackwell, Washington, D. C., Franklyn E. Conflenti, Cauley, Birsic & Conflenti, Pittsburgh, Pa., for Delta Mining, Inc. and G. M. W. Coal Co., Inc.

Harold R. Schmidt, Rose, Schmidt & Dixon, Pittsburgh, Pa., John L. Kilcullen, Washington, D. C., for Edward Mears, and others.

Before ADAMS, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The question on this appeal is whether, under the Federal Coal Mine Health and Safety Act,[1] the Secretary of Interior may assess civil penalties against mine operators without making and publishing factual findings. The district court, in which the Secretary sought enforcement of assessment orders against the defendant mining companies,[2] held that the orders were invalid because of the absence of such findings, and the Secretary appealed.

The Act was passed in 1969 to "protect the health and safety of the Nation's coal miners." [2a] At various times during 1971, inspectors of the Bureau of Mines, Department of Interior, entered and inspected the coal mines operated by the various defendants, seeking to determine the extent of compliance or noncompliance with the Act, and with the regulations promulgated thereunder.[3] During the course of these visits the inspectors detected a number of violations of the Act or the regulations. In each such instance, an inspector served the defendant in question with a notice of the infraction. Each notice stated that the particular violation had to be abated by a certain date. On the date set for abatement, the inspector returned to the mine and, upon determining that the violations had in fact been abated, furnished the defendant with a notice to that effect.

After the abatement of each violation and the notification of the defendant involved, the local office of the Bureau of Mines sent copies of the notices of violation and abatement to the Bureau's central office in Washington, D.C. There an Assessment Officer reviewed the various notices and sent proposed penalty assessment orders to the defendants.[4]

The proposed penalty assessment orders informed each defendant that the Assessment Officer, after giving "due consideration" to certain statutory crite-

---

1. 30 U.S.C. § 801 et seq.

2. Separate enforcement proceedings were brought against G.M.&W. Coal Co., Inc., Delta Mining, Inc. and Edward Mears, d/b/a M.Y. Coal Company. The cases involve identical issues, and so the appeals were consolidated in this court. The several appellee coal companies are referred to herein collectively, as "defendants."

2a. 30 U.S.C. § 801(g)(1).

3. 30 C.F.R., Ch. 1, subch. 0.

4. In most instances, the Assessment Officer consolidated several violations into one. proposed penalty assessment order.

ria, intended to assess civil penalties in various amounts; that the defendants could protest the assessments in writing; and that the defendants had a right, secured by statute, to request hearings. Each defendant protested the orders.[5] However, the Assessment Officer did not consider that a reduction in the size of the penalties was called for, and he accordingly notified the defendants of his affirmance of the proposed orders.

The defendants were also notified, upon affirmance of the proposed orders, that they had 15 days in which to request a hearing, and that upon their failure to do so within the prescribed time the proposed orders would become the final orders of the Secretary. No hearings were requested and the final orders of the Secretary were entered. When the defendants failed to pay the assessments set forth in the final orders, this action for enforcement was brought in the district court.[6]

Section 109(a)(3) of the Act[7] provides in part as follows:

"A civil penalty shall be assessed by the Secretary only after the person charged with a violation under this chapter has been given an opportunity for a public hearing, and the Secretary has determined, by decision incorporating his findings of fact therein, that a violation did occur and the amount of the penalty which is warranted, and incorporating, when appropriate, an order therein requiring that the penalty be paid. . . . Any

hearing under this section shall be of record and shall be subject to section 554 of Title 5."

Section 109(a)(1)[8] enumerates six factors to be considered by the Secretary in determining the amount of any penalty assessment:

"In determining the amount of the penalty, the Secretary shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation."

The proposed orders of assessment which the defendants received from the Assessment Officer were on preprinted forms which recited, in some instances, that the six factors set out in the statute had been considered.[9] The final orders entered by the Secretary did not mention the six statutory criteria at all, but merely set forth the Secretary's finding that a violation "did, in fact, occur."[10] The defendants contend, and the district court agreed that in omitting from the final orders express findings of fact relating to the statutory criteria for determining the amount of the penalty, and so providing no assurance of any considered application of these criteria, the Secretary failed to satisfy the requirements of section 109(a)(3).

5. When a protest is made to a proposed order, the Assessment Officer may either vacate, modify or affirm the proposed order. If the proposed order is vacated, the proceeding ends there; if it is modified or affirmed, the violator has the right to seek a hearing, which is held at a location as near as possible to the coal mine involved.

6. Section 109(a)(4) of the Act, 30 U.S.C. § 819(a)(4), provides for actions in the district courts to enforce penalty assessment orders.

7. 30 U.S.C. § 819(a)(3).

8. 30 U.S.C. § 819(a)(1).

9. One proposed order lists, as having been considered, the six criteria of section 109(a)(1). Some of the others merely state that consideration has been given to "all available information, including the gravity of the violation."

10. The "finding" that a violation "did in fact, occur,"—which is required under section 109—was originally made by the Assessment Officer. Curiously, the Assessment Officer did not make the finding of violation, in some cases, until several months after the entry of the proposed orders of assessment.

■ The Secretary counters that the language of section 109(a)(3), requiring a "decision incorporating his findings of fact therein," applies only when a defendant has requested an oral hearing, and that when, as here, the Secretary makes a "decision" without any hearing, it is unnecessary under the statute to include any findings of fact.[11] We reject this contention and affirm the district court's grant of summary judgment in favor of the defendant mine operators.

■ We note that, in ordering penalty assessments without making express findings, the Secretary was acting pursuant to, and in apparent conformity with, the pertinent Regulations of the Department of Interior.[12] Regulation 100.4(h) [13] provides that once a proposed order of assessment has been made, the operator charged shall have 15 days in which to accept such order of the Assessment Officer or to seek a "formal adjudication." Acceptance, or failure to request an adjudication, results under the Regulation in the proposed order becoming "the final assessment order of the Secretary." Thus, the Regulations appear to contemplate the very procedure that was utilized here: a proposed order became final without the Secretary himself making findings on the question of penalty amount.[14] The question before us then, narrows to whether the Regulations themselves, as implemented, were consistent with the requirements of the Coal Mine Health and Safety Act.

As noted above, the Act provides that a civil penalty may be assessed only after the operator "has been given an opportunity for a public hearing." The language of the Act would appear to require also that, whether or not the operator requests a hearing, the assessment *must* be made "by [the Secretary's] decision incorporating his findings of fact therein, that a violation did occur and the amount of the penalty which is warranted." The Secretary seeks refuge from this interpretation by pointing to the legislative history, which, he asserts, supports his reading of section 109.

Nothing in that history convinces us, however, that any departure from the plain import of the statutory terms is warranted.[15] There is not a modicum of evidence in the reports from either

11. The Secretary characterizes the entry of a final order after failure of the violator to request a hearing as a type of "default judgment," and argues that since the operator has willingly forfeited his "day in court," he will not be heard to object to the absence of findings. This reasoning is appealing but, as will be shown, not applicable.

12. 30 C.F.R. Pt. 100, effective January 14, 1971. The Part 100 Regulations were amended in some small details on June 15, 1972, and were indefinitely suspended on April 24, 1973. *See* 38 Fed.Reg. 10085, 4/24/73. The references in this opinion are to the Regulations in force between January 14, 1971 and June 15, 1972.

13. 30 C.F.R. § 100.4(b). There are other Interior Regulations (30 C.F.R. § 301.50, now 43 C.F.R. Part 4) dealing with penalty assessments, the relevance or validity of which we do not pass upon here.

14. It is apparent that the "findings" of the Assessment Officer on the issue of penalty amount, where made, were little more than *pro forma* recitations that the pertinent statutory criteria had been considered. *See* Note 7, *supra*, and accompanying text. In view of the realities of the penalty assessment procedure, we reject the contention that the "findings" as to penalty amount set out in some of the proposed orders were the sort of findings contemplated by section 109. Mere recitation that the statutory criteria for gauging penalty amounts have been given "due consideration" will not convince us "that the agency has . . . really taken a 'hard look' at the salient problems and has . . . genuinely engaged in reasoned decision-making." Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841, 851 (1970) cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701 (1971).

15. Indeed, the statutory language appears so unequivocal that we question whether resort to legislative history is even appropriate in interpreting section 109. *See* Schiaffo v. Helstoski, 492 F.2d 413, No. 72–21–67/68, (3d Cir., Jan. 4, 1974), slip op. at 428; Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527 (1947).

House of Congress,[16] nor in the Conference Committee report on the compromise bill that became section 109,[17] that would indicate an intent to dispense with findings of fact where no hearing is requested.

Another consideration, apparent on the face of section 109, tends to indicate that findings are required when a violator does not seek a hearing as well as when he does. When a hearing is requested, the section 109 triggers the application in that proceeding of section 5 of the Administrative Procedure Act[18] which, by incorporating section 8 of the APA,[19] requires that the final decision of the Secretary be accompanied by findings. Thus the language in section 109 itself requiring findings would be merely duplicative if it did not refer to some situation other than that in which a hearing is requested and held. While duplication and repetition in statutory language are certainly not unheard of, it would seem a salutary ᾽ rule to avoid reading the terms of a statute as mere surplusage in the absence of some proof that they were so intended. Lacking such proof here, we conclude that Congress intended *every* final assessment order of the Secretary to be accompanied by findings of fact.[20]

Findings of fact, explicit and public, are necessary to assure that the administrative process not degenerate into arbitrariness or, worse, into discrimination and spite.[21] Thus, though flexibility and the capacity to make rapid determinations are vital weapons in every administrator's arsenal, "we cannot assume in the absence of adequate explanation that proper standards are implicit in every exercise of administrative discretion." [22] Judicial review of a final administrative determination is heralded as a right,[23] and such review is rendered practically impossible, or at least vastly more difficult, where the agency's decision is not accompanied by express findings.[24]

Though it might not be beyond Congress' power to provide for the entry by the Secretary of penalty assessment orders without findings of fact, such a provision would run against the grain of much of our administrative jurisprudence. The Secretary has failed to adduce any evidence that Congress intend-

16. *See* H.Rep. 91–563, 91st Cong., 1st Sess., and S.Rep. 91–411, 91st Cong., 1st Sess. The documents are included in Legislative History of Federal Coal Mine Health and Safety Act, compiled by the House Committee on Education and Labor, at pp. 569, 93, respectively.

17. *See* H.Rep. 91–781, 91st Cong., 1st Sess.

18. 5 U.S.C. § 554.

19. 5 U.S.C. § 557.

20. The Secretary also mounts a semantic argument against the district court's construction of the statute, by asserting that the word "therein" in section 109 refers to the *hearing*, and not to the "decision" of the Secretary. Thus, he claims, when no hearing is held, there can be no "findings of fact therein." Since the word "decision" follows "hearing" in the statute, the most natural and probable referent of "therein" is "decision," not "hearing." Words in statutes ordinarily should be accorded their most common, everyday meanings. *See, e. g.*, Boston Sand & Gravel Co. v. United States, 278 U. S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928). Nor can we fail to note that section 109 makes a second use of the word "therein," the referent of which is clearly "decision" and not "hearing." *See* text accompanying note 7, *supra*.

21. *See* Note, Administrative Findings Under Section 8(b) [of the APA], 51 Va.L.Rev. 459, 462–64 (1965) ; K. C. Davis, Discretionary Justice, ch. VI (1969).

22. Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 596 (1971).

23. *See* PBW Stock Exchange, Inc. v. Securities and Exchange Comm'n, 485 F.2d 718, 750 (3d Cir. 1973) (dissenting opinion of Adams, J.).

24. *See* Environmental Defense Fund, Inc. v. Ruckelshaus, *supra*, 439 F.2d at 598: "Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible. . . . Discretionary decisions should more often be supported with findings of fact and reasoned opinions." *See also* K. C. Davis, *supra*, at 103–106.

ed, in enacting section 109, to permit some final determinations to be entered without such findings. Indeed, there is substantial evidence, on the face of the statute, just to the contrary. We therefore hold that the assessment orders in this case were invalid and that, to the extent they were entered in conformity with the Regulations, those Regulations too were invalid.[25]

In so holding, we observe that the Bureau of Mines had not, at the time these assessments were made, established or adopted any detailed guidelines to assist Assessment Officers in the application of the six statutory criteria set out above for the exaction of civil penalties. The absence of any such guidelines led the Comptroller General, in a report on the Bureau of Mines,[26] to state that:

"We [the Comptroller General] were unable to determine the adequacy of the consideration given to the six factors and the basis for the penalties assessed in [400] sample cases.

\* .\* \* \* \* \*

" . . . [T]he mine operators did now know how the factors should be considered and weighed in determining the amount of the penalty."[27]

Guidelines would go far toward assuring that penalty assessments bear a real and substantial relation to the six congressionally-selected factors. In the absence of such guidelines—and their promulgation is for the Secretary, not the courts—the clear mandate of section 109 must suffice. That mandate requires, at a minimum, that each final assessment order be accompanied by the Secretary's express findings, concerning both the fact of violation and the appropriate penalty amount.

We are in full sympathy with the goals and spirit expressed in the Coal Mine Health and Safety Act, and we have listened with concern to the Secretary's claim that a requirement of findings in every case may handicap efforts at effective enforcement of the Act's penalty provisions. Yet, we do not consider it appropriate to substitute for Congress' directive the Secretary's, or our own, notions of how best to administer the Act. Though the attainment of safe, reasonably healthy conditions in the coal mines is a commendable statutory objective, so too is the assurance that no one, be he miner or coal magnate, be treated arbitrarily or discriminatorily in any administrative proceeding.

Moreover, it may well be that the requirement of findings of fact in every case will mitigate, not worsen, the administrative burden cast upon the Secretary by his duty to enforce the Act. Where the proposed orders entered by the Assessment Officer, and the final orders of the Secretary, evince that full consideration has been given to the statutory criteria, mine operators may be less inclined to challenge the assessments by way of either administrative hearings or judicial proceedings. That is to say, without some positive indication of the Secretary's basis for calculating a particular assessment, an operator cannot make a reasoned judgment whether a penalty is a fair one, or a merely arbitrary exaction. Thus, by making explicit findings of fact in each instance—that is, by making public a process that ought to be undertaken anyway—the Secretary may well forestall numerous costly and time-consuming adjudicative proceedings.

We are aware that, only recently, the District of Columbia Circuit reached a conclusion concerning the Act that is at odds with our holding in this case. In National Independent Coal Operators' Ass'n v. Morton, 494 F.2d 987 [28] that

25. As noted in Note 9, *supra*, the Part 100 Regulations have now been indefinitely suspended.

26. Report by the Comptroller General to the Conservation and Natural Resources Subcommittee, House Committee on Government Operations, entitled "Improvements Needed in the Assessment and Collection of Penalties—Federal Coal Mine Health and Safety Act of 1969" (July 5, 1972).

27. *Id.* at 25–26.

28. No. 73–1678 (D.C.Cir., Feb. 11, 1974).

court reasoned that "the operator's failure to request a hearing suggests that he does not dispute the fact of violation nor disagree with the appropriateness of the specific penalty proposed," and that "[w]here no issue is disputed by the operator, we do not believe that Section 109(a)(3) requires the Secretary to prepare a formal decision which merely would consist of the same information already contained in the proposed assessment order."[29]

At least two considerations serve to distinguish the cases before us from that apparently confronting the District of Columbia Circuit in *National Independent*. First, in the cases before us, the defendant operators' failure to request a hearing in no way suggests that the appropriateness of the penalty amount went undisputed. In each instance, the operators lodged protests with the Assessment Officer, indicating that the propriety of the amounts was a hotly contested issue. In these circumstances, we are reluctant to infer from the operators' failure to request hearings that their objections to the penalty amounts suddenly ceased. There are other equally plausible reasons, cost and inconvenience among them, to explain the defendants' failure to seek formal hearings.

Second, a decision by the Secretary which sets out his findings of fact in these cases and thus demonstrates a considered application of the criteria of section 109, would not "consist of the same information already contained in the proposed assessment order." As indicated above, the proposed assessment or-

ders in this case contained *no* "information" other than *pro forma* recitations that the six criteria for determining penalty amount had been considered. Thus, findings of fact in these cases would provide the operators with information they had not yet received, information to which, under our view of the Act, they are entitled.[30]

 Thus, at least in the context of these enforcement actions,[31] we adhere to the view that each final decision of the Secretary must be accompanied by findings of fact, concerning both the fact of violation and the magnitude of the penalty.[32]

The judgment of the district court will be affirmed.

---

29. *Id.*, pp. 991–992.

30. The District of Columbia's decision in *National Independent* appears to buck the drift of much of that Court's prior administrative jurisprudence. *See, e. g., Ruckelshaus* and *Greater Boston Television*, supra; D.C.Federation, of Civil Ass'ns v. Volpe, 148 U.S.App.D.C. 207, 459 F.2d 1231 (1972); Calvert Cliffs' Coordinating Comm. v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971); Station KFH v. FCC, 101 U.S.App.D.C. 164, 247 F.2d 570 (1957).

31. *National Independent, supra,* involved a suit to enjoin application of the civil penalty as-

sessment procedures embodied in the Pt. 100 Regulations.

32. We have considered and have rejected two other contentions of the Secretary, (1) that the enforcement procedure in the district court cures any defects in the Secretary's final order, and (2) that by failing to object to the lack of findings in any administrative proceeding the defendants have failed to "exhaust administrative remedies," and so are barred from objecting in the courts. In connection with the second contention, we note that once a final order has been entered, there is no opportunity to lodge an objection with the Secretary or Bureau of Mines.