**CITY OF VALDEZ, Alaska, a municipal corporation,
Appellant,**

**v.**

**COPPER VALLEY ELECTRIC ASSOCIATION, INC., State of Alaska, Alaska Power Authority, and Alaska Public Utilities Commission, Appellees.**

**COPPER VALLEY ELECTRIC ASSOCIATION, INC.,
Appellant,**

**v.**

**CITY OF VALDEZ, State of Alaska, Alaska Power Authority, and Alaska Public Utilities Commission, Appellees.**

Nos. S-1561, S-1562.

Supreme Court of Alaska.

Aug. 7, 1987.

———

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant City of Valdez.

Andrew E. Hoge and David S. Johnson, Hoge and Lekisch, Anchorage, for appellant Copper Valley Elec. Ass'n, Inc.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage, and Ronald W. Lorenson, Acting Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal is from the denial of summary judgment motions filed by the City of Valdez (Valdez) and the Copper Valley Electric Association (CVEA) respectively, and from the granting of cross-motions for summary judgment filed by the State of Alaska (State), the Alaska Power Authority (APA) and the Alaska Public Utilities Commission (APUC). The motions were predicated upon the discontinuance of the state's Power Cost Assistance (PCA) payments to the CVEA for a period of months in 1981. The state discontinued these payments because it believed that Valdez's independently created Electric Consumer Assistance (ECA) program, which provided fuel cost assistance payments directly to Valdez customers, ran afoul of certain eligibility requirements for receipt of PCA funds contained in former AS 44.56.162 (now AS 44.83.162).

In granting the cross-motions, the trial court concluded that 1) Valdez lacked standing to bring this action; and 2) CVEA was barred from bringing this action by the two-year statute of limitations the court found to be applicable.

For the reasons that follow, we affirm the judgment of the superior court in granting the cross-motions for summary judgment, but reverse regarding the issue of attorney's fees awarded the state against Valdez and CVEA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Alaska Legislature responded to a rapid increase in fuel costs between 1978 and 1981 by instituting a program aimed at equalizing the costs of power in rural Alaska to the cost of power in major Alaskan cities. This program, now called the Power Cost Equalization Program (formerly the Power Cost Assistance Program) is administered by the APUC. Once an applicant utility is deemed qualified for relief by the APUC, the APA issues assistance to that utility. The utility then uses the full amount received to credit the monthly utility bill of its customers.

CVEA, an electrical cooperative serving the electric power customers of Valdez, received PCA payments through December 1980.

Valdez's ECA program entitled Valdez residents to direct payments from the city for one-third of their electric bill after the bill was paid.

In December 1980, at the request of the APA, the attorney general for the State of Alaska rendered an opinion concluding that Valdez's ECA program payments constituted "other power production cost assistance" under AS 44.56.162(j)(2)[1] which, under the statute, the APA was required to deduct from the PCA payments otherwise due CVEA. Ch. 83, § 42, SLA 1980. Accordingly, PCA payments were withheld from CVEA for the months of January through July 1981. Valdez terminated its ECA program in April 1981.

In response to the termination of PCA funds, counsel for Valdez and CVEA worked jointly to resolve the problem at minimal expense by requesting reconsideration of the attorney general's opinion.

Valdez and CVEA filed this suit November 15, 1983, requesting a declaratory judgment that the power cost equalization statute does not authorize a deduction from the PCA payments to which CVEA was entitled because of payments that Valdez made to customers pursuant to its ECA program. Valdez and CVEA further requested recovery of payments withheld from CVEA from January through mid-July 1981 in the amount of $114,509.30, plus interest and costs.

---

1. The statute was renumbered as AS 44.83.162 in 1980. It has been revised substantially twice since the time this lawsuit arose. Am. ch. 118, § 8, SLA 1981; Am. ch. 133, § 1 SLA 1984. The substance of subsection (j)(2) is now contained in AS 44.83.162(b).

Valdez moved for summary judgment on the ground that it was entitled to judgment on the question of the APA's obligation to make PCA payments. The APA opposed Valdez's motion and cross-moved for summary judgment, arguing that Valdez lacked standing to sue the state and the APA for wrongfully withholding PCA payments from the CVEA.

The trial court denied Valdez's motion and granted the APA's cross-motion, concluding that Valdez lacked standing to bring this action. Valdez filed a motion for reconsideration which was also denied.

CVEA filed a separate motion for summary judgment in which it argued that the language of then AS 44.56.162(j)(2) clearly stated that payments under Valdez's EPA program should not be subtracted from the PCA payments. The APA opposed CVEA's motion and cross-moved for summary judgment, arguing *inter alia* that CVEA's complaint was time barred under the allegedly applicable statute of limitations, AS 09.10.070(3).

The trial court denied CVEA's motion and granted the APA's motion, concluding that the applicable statute of limitations was AS 09.10.070(3), which requires commencement of an action within two years from the date the cause of action arises. The trial court further rejected CVEA's other arguments, which it urged in order to bring this action within the six-year statute of limitations contained in AS 09.10.050. CVEA filed a motion for reconsideration which was also denied.

The trial court awarded $2,850.50 in attorney's fees to APA. In doing so, the court rejected Valdez's and the CVEA's argument that this case qualified as public interest litigation and no award of fees should be made. This appeal ensued.

## II. DISCUSSION

### A. VALDEZ'S ELECTRIC POWER CONSUMERS WERE INELIGIBLE TO RECEIVE THE BENEFITS OF THE STATE'S PCA PROGRAM BETWEEN JANUARY AND JULY, 1981.

CVEA argues that it is not barred by the applicable statute of limitations from main-taining this action. Valdez argues that it has standing to bring this action and that it is not barred by the applicable statute of limitations from maintaining this action. For the purposes of this appeal we assume that both parties have standing to bring this action and that the action is not barred by any statute of limitations. We do so because we conclude that on the ultimate question of statutory interpretation presented here, the state prevails.

■ AS 44.56.162, renumbered AS 44.83.162 in 1980, was controlling at the time this cause of action arose. AS 44.56.162(a) provided:

> There is established a separate fund to provide financial assistance to eligible electric utilities in the state, the power production cost assistance fund which shall be administered by the [APA] authority as a fund distinct from other funds of the [APA] and which is composed of money appropriated for the purpose of providing power production cost assistance to an eligible utility.

Ch. 83, § 42, SLA 1980.

AS 44.56.162(j)(2) provided:

> [A]ctual power production costs are the expenses and costs prescribed in this subsection less any other power production cost assistance *provided to the electric utility.*

*Id.* (emphasis added).

Valdez argues that its ECA program was not "power production cost assistance" within the meaning of AS 44.56.162(j)(2). It contends that its program provided payments to customers directly, not to the utility, (CVEA), and therefore its program did not run afoul of the clear language contained in the statute.

The state essentially argues that Valdez's program frustrated the legislative intent of the PCA program.

We have stated that in ascertaining the meaning of a statute "our primary guide is the language used, construed in light of the purpose of the enactment." *Commercial*

*Fisheries Entry Com'n v. Apokedak,* 680 P.2d 486, 489–90 (Alaska 1984) (footnote omitted) citing *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979).

On its face, former AS 44.56.162(j)(2) appears to require that only payments *provided to the electric utility* be deducted from the actual power production costs of the utility in determining its eligibility for PCA payments. However:

> [A]scertainment of the meaning apparent on the face of a single statute need not end the inquiry. *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 10, 48 L Ed 2d 434, 96 S Ct 1938 [1942] (1976); *United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543–44, 84 L Ed 2d [sic] 1345, 60 S Ct 1059 [1063–64] (1940). This is because the plain meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand Co. v. United States,* 278 U.S. 41, 48, 73 L Ed 170, 49 S Ct 52 [54] (1928) (Holmes, J.) [9] The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect.

---

[9] "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." Cabell v. Markham, 148 F2d 737, 739 [2d Cir.] (L. Hand, J.), aff'd, 326 U.S. 404, 90 L Ed 165, 66 S Ct 193 (1945).

*Watt v. Alaska,* 451 U.S. 259, 266 & n. 9, 101 S.Ct. 1673, 1678 & n. 9, 68 L.Ed.2d 80, 88 & n. 9 (1981) (footnote integrated into text); *see also Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868, 870 (9th Cir.1981) ("[P]lain meaning rule is no longer considered an absolute prohibition [to the consideration of legislative history], but a flexible principle for ascertaining the intent of Congress.").

It is evident that one purpose of the PCA statute is to provide power cost assistance to electric power customers, just as was the purpose of Valdez's ECA program. The state legislature realized this purpose by providing power production cost assistance directly to electric utilities, which was then credited to the consumer.

A second purpose of the statute is to equalize the cost of power on a statewide basis, thus resulting in rural Alaska customers paying a similar amount per kilowatt-hour for electricity as urban Alaska customers. *See* AS 44.83.162(a). To this end, the PCA program seeks to distribute a finite amount of financial resources where they are most needed. While Valdez may be applauded in its effort to further assist its electric customers, many municipalities are financially unable to render power cost assistance to their residents. The result in this case is that power cost assistance was duplicated for one small group of customers. This frustrates the intent of the legislature to equalize power costs on a statewide basis. Valdez customers are not entitled to state PCA funds when such funds would actually place them in a better position than other rural power customers. Therefore, PCA payments were properly withheld during the relevant period.

Our conclusion is bolstered by the fact that the PCA statute was amended in 1981 to provide that "[t]he costs used in determining the power cost equalization [payments to utilities] shall exclude any other type of assistance that reduces the *customer's* costs of power...." AS 44.83.162(b). We view this as a clarification of the legislative intent that other power cost assistance to customers be deducted from the actual power production costs of the utility under former AS 44.56.162(j)(2).

For the foregoing reasons, the trial court properly denied the CVEA's and Valdez's motions for summary judgment.

### B. ATTORNEY'S FEES.

▪ Both the CVEA and Valdez argue that the trial court erred in assessing attorney's fees against them because this case qualifies as public interest litigation.

Therefore, no award should have been made. The parties cite *Kenai Lumber Co., Inc. v. LeResche*, 646 P.2d 215 (Alaska 1982), in which this court set forth several criteria useful in identifying public interest litigation. These are:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

*Id.* at 222, citing *Anchorage v. McCabe*, 568 P.2d 986, 991 (Alaska 1977).

This case involves the alleged wrongful withholding of payments which CVEA is allegedly entitled to receive directly from the state, and which should have been credited on the customer's bill, thus lowering the cost of electricity to the citizens of Valdez. While there is admittedly a good deal of self-interest at stake for CVEA, both CVEA and Valdez sought to effectuate one policy underlying AS 44.83.162, to wit: to provide power cost assistance to electric power customers of the City of Valdez. The customers of CVEA would have received benefits from the lawsuit and CVEA was probably in the best legal position to sue, since by statute it was CVEA which was to demonstrate eligibility and receive direct payments under AS 44.-83.162.

We conclude that the trial court erred in awarding attorney's fees against CVEA and Valdez.

### III. CONCLUSION

The judgment of the trial court denying the CVEA's and Valdez's motions for summary judgment and granting APA's cross-motion for summary judgment is AFFIRMED. The award of attorney's fees is REVERSED.